May it please the court Philip Gregory of Kitchett Petrie and McCarthy for appellants I'd like to reserve two minutes of time your honor, and I have with me in my Courtroom mr. Scarf one of my clients and obviously what happened here is mr. Scarf found that through two entities Scarf Sears and Hantoga partners a Payroll scheme had been in place for a number of years where he lost Through the the entities lost rather Over 15 million dollars was taken by the bookkeeper the district court Decided at the motion to dismiss stage that that payroll the allegations concerning that payroll scheme did not establish a claim for negligence What's interesting about that is the district court said that because there was a contract? Both between Scarf Sears and the payroll firm and Hantoga partners and the payroll firm that contract limited the duties between the parties and as a result there was no possibility for a claim outside of that contract as Many just California decisions as held that is absolutely not the case in fact Go if you go back to even 1883 in a decision cited in the Northern Chemical case There's a woman boards a train She gets a contract with a ticket the ticketing agent takes her ticket another ticketing agent comes along and says you don't have a ticket Kicks her off the train She's not entitled just to sue for breach of contract for the rest of the train ride, but she's entitled to sue in tort and That's essentially what? our Scarf Sears and Hantoga partners should be prevented to do in the negligence claim In Northern Chemical there was a contract between a chemical company and a firm to bag Toxic chemicals that were that later going to be used for LCD screens the Chemicals are transferred pursuant to the contract to the outfit that puts them in the bags But they contaminate those chemicals when they put them in the bags. They're then shipped off and The Company that's going to put the chemicals in the LCD screens finds the contaminated chemicals brings a claim against Northern Chemical and Northern Chemical then files an indemnity claim against the Outfit that bagged the chemicals and the outfit that bagged the chemicals said well, we don't have a there's no right There's no right in tort against us The Court of Appeals said absolutely there is the contract did not Specifically state that you were not going to put Northern Chemicals Products and a contaminated vat but in doing that you violated a duty That is in tort you took on a service You perform that service improperly and as a result Northern Chemical was damaged That meant that the Northern Chemical company could state a claim in negligence Further Recently Judge Walker in the Northern District has said that a claim for breach of contract can also apply to a tort claim if the duty arises by virtue of a professional services contract and Judge Walker's decision cites to Attorney-client Claims which state while the client retains the attorney the attorney and that may be a contractual relationship but if the attorney breaches The duties owed to the client the client also has a claim for malpractice Judge Walker's decision goes on to discuss home inspections and And Points out that these professional services contract not only apply to the precise language of the contract But provided professional duty that goes beyond that contract Here the district court in dismissing stated that There was no duty outside of the contract and That decision is clearly wrong because Defendants were obligated to use reasonable care in performing their duties for the scarf entities in The complaint the fifth claim for relief details those improper acts The payroll firms did not determine the extent of Wong's authority they distributed excess payroll to Wong based on payroll activity of other companies they advance They provided Wong with guidance on how to stay under the tax radar So that essentially when the tax with withholding was done on the initial two paychecks the Grossly overinflated paychecks they were tax levels that were closer to what her true Salaries should have been so instead of withholding taxes on say a hundred thousand dollars They withheld taxes on two thousand dollars. And again, they took on These duties they disregarded their security procedures. They accepted bribes Particularly vague home accepted bribes that exceeded $80,000 Is it significant that The defendants knew mr. Scarf and knew that he was the individual behind the corporations Behind the partnerships it that he was the general partner of the partnerships. If you look at the payroll services agreement exhibits a and b to the Consolidated complaint it lists. Mr. Scarf as a general partner It lists Carol Wong either as a secretary or as a chief accountant But does not list her as having any I'm going to call it ownership interest further the testimony That was submitted and at the summary judgment stage was they knew that Carol Wong was not an owner of the business They knew the bookkeeper was not an owner of the business And So, I think it is significant that if you as in the Torrance bank case, you know, you're dealing with a bookkeeper He or she does something that is outrageous I want to adjust my salary from $2,000 to a hundred thousand dollars and I only want you to withhold taxes on $2,000 and in fact, I want you to calculate how I can go about doing that. Is That something that should have triggered someone to say that's That's improper conduct in Approving that transaction. In fact later at the summary judgment stage the testimony that was submitted of the person most knowledgeable for The payroll entities said that we didn't have any transactions like these these were extraordinarily Unusual. In fact, they said that they did approve the transactions but that they thought that it was a one-time that would be the Woman who approved the transactions thought it was a one-time Approval did not know it was being done on an ongoing basis Your honors I'm going to shift now to the courts ruling on respondeat superior And I think it's important here that we have a division among the defendants We have three of the defendants who are here saying that respondeat superior Applied does not apply. We have one who says that it does apply and Here I want to point out that at the summary judgment stage We have the declaration of Susan's story again the person who was the 30b6 witness for the payroll entities and She outlines what was done here. She doesn't state that what the payroll people did was improper She doesn't state they exceeded their authority. So for example in Lisa M when you have the ultrasound technician taking advantage of the Patient they say that person exceeded his authority or in the FedEx case where the Packages were stolen the the contention is well No employee had the right to steal the packages But the position that these parties took at the summary judgment stage was that what was done? Was what they were told to do they did it appropriately and everything was fine It just happened to be extraordinarily unusual adjustments But their view at summary judgment was so what? They didn't come forward and say that what vague home or Chakotay did Was acting outside the scope of their authority so for example if you it's it's not where an employee does something like in the Rogers case where Employees are fighting among one another after having a significant number of beers and they say Those employees were not acting in in the course and scope of the their employment when they engaged in that fight We don't have that record here further we have vague home Signing on to process the payroll for the scarf entities after She leaves the employee employee of these defendants What the district court found here is that there was essentially and no evidence and that these two employees Were acting within the course and scope of employment because what they were doing was they were engaged in an intentional But simply because they were engaged in an intentional report does not Equate with a Invalidation of respondeat superior that's not part of the test What the key part of the test is is who should bear the risk of harm? Created by the employers enterprise and here again. We have a payroll firm They're processing payroll all the time these two employees are receiving What we believe are bribes what they can tender gifts on a monthly basis from the defrauding bookkeeper as? a result Appellants believe that the respondeat superior doctrine should not have been applied to this case Finally your honors. I want to deal with the issue of Evidence of damages before the district court Through the declaration of mr. Bass that was submitted at the time of defendants motion for some judgment there were answers to interrogatories that had been prepared by plaintiffs and these interrogatories primarily went to the issue of damages and What they what they did in in in in in in in answered an interrogatory that laid out Essentially how the damages were to be allocated among Pantoga partners and scar seers and that was Exhibit 28 to mr. Bass's declaration That damage evidence was all before the court at the time of the hearing We had a number of summary judgment Matt motions we also had a motion to exclude evidence and the court that the district court asked Where's the evidence of damages? I said it's in the answers to interrogatories the judge nods his head and moves on The reason we say that is under rule 56 answers to interrogatories are properly Available to consider as to whether there is an issue of Fact and here the issue was Carol Wong stole over 15 million dollars If you give that the line of credit scheme funneled some of that money into and to Carol Wong's pocket That amount of money was only ten million dollars as a result There is no question that from defendants five million dollars at least was taken Thank you very much, I will reserve time for a bottle, okay Mr. Bass Your honor First of all, it's our I'm sorry. Who do you represent? Mr. Bass? I apologize. I represent Defendants into it and Lisa Ciccotti, okay Are you speaking on behalf of all defendants here and computing resources, which is a subsidiary of into it? I'm going to be speaking on behalf. Will you speak a little bit more loudly, please? Yes, your honor I apologize. I'm gonna be speaking on behalf of into it computing resources and Lisa Ciccotti. Okay, thank you Are the other defendants going to be represented here at oral argument? I Think the other defendant which is Kelly bake home is gonna cede her time to me, okay And that doesn't present any conflicts in the argument I'm not gonna argue on behalf of Kelly bake home your honor. I'm gonna argue on behalf of my clients and I think that The argument we present in our view is sufficient to affirm the judgment below I'm Sure, if the court has questions specifically to miss bake homes counsel, he is here. Okay your honor we view this appeal as Something more like the equivalent of a request for a do-over Than a legitimate appeal from the rulings of the district court Much if not most of what has been presented to you by way of briefing an argument Was not presented to the district court judge either in the context of the motion to dismiss In the in the context of which the negligence cause of action that was the fifth Claim for relief of the consolidated amended complaint Was the point at which the negligence claim was resolved? More pointedly in the context of the summary judgment proceedings in which the remaining claims were resolved the intentional tort of Aiding and abetting a fraudulent concealment and the conversion claim which has since been conceded not to apply that concession was made in the appellants briefing here and so the If you if you look at the actual proceedings In front of the district court, if you look at judge Fogle's ruling you look at the What followed then by way of a request by the appellants to submit additional evidence and argument to judge Fogle and you look at his Detailed response to that denying that request what the record actually contains is a remarkable dearth of Evidence that would have been sufficient to give rise to a tribal issue of fact With respect to the summary judgment proceedings There's a dearth of argument legal argument on the issue For example that you just heard about respondeat superior that argument was not made to the district court judge initially in the summary judgment proceedings We carried our initial burden. We cited Decisions of this Court of the Ninth Circuit as well as decisions of the California Supreme Court Which we believe we believe then we believe now Governed and mandated the determination that in in this situation Where you have an accusation that employees of a company are engaging in knowing intentional criminal conduct clearly outside the scope of their authority that the doctrine of respondeat superior does not then Result in liability for the employer. Well, there certainly are mr. Bass cases all over, California where intentional acts of an employee saddle respondeat superior liability upon the employer where the employer has put the employee in a Position and close them with the authority to do the acts which allow him to Do the intentional torts no question about that your honor. There's no question, but that the landscape of respondeat superior Jurisprudence in California is not simply a straight path It is a complex and interesting area of jurisprudence what we argued in moving for summary judgment before judge Fogle was that the the allegations the record in this case were Much more like this court's decision in Federal Express in which the employees of Federal Express used their positions used their entree to a area of an airport to to steal steal product from the plaintiff the Ninth Circuit said What they did? all be it was certainly true that they were put in the position physically to perpetrate that theft by virtue of their employment with Federal Express, but What they did had nothing to do with a normal course of their employment it exposed it did not benefit Their employer in any way indeed exposed, but what your employees the CRI did was exactly What they were paid to do the federal employer the Federal Express people use the Federal Express Badges and their uniforms etc to get in and steal But what your people did was to cut the checks to miss weighing for a hundred thousand dollars a Month and of course the more checks they were cutting the better for the company the greater the the money that they handled the greater the greater glory for the company well With respect your honor you lost me at that last phrase because there's certainly nothing in the record and it is not true that CRI or into it benefited from the payments to the Cutting checks for miss Wang Was part of their job cutting checks for the payroll was part of their job and in doing that job. They were Misallocating funds from where the funds should have gone Well the fact that you do your job wrong means you aren't within the scope of your employment. I think that's a Unusual interpretation no no and let me try to make a finer distinction if I may Certainly the fact if one does one's job wrong Certainly doesn't take it out of the scope of your employment the accusation here wasn't that they were doing their job wrongfully Is what that is it was that there were knowingly colluding with a thief? That was not part of their job. And so that in our view is No different from the Federal Express Context what what they were doing? Yes, their job was to take instructions And I think this is important to to appreciate their job was to take instructions from this long from this long To take instructions twice a month as to the payroll for herself and other employees Of the two companies scarves Sears and Associates and Pantoga That's what they did they were accused in this lawsuit of having abused that position in order to aid and abet a fraudulent concealment of thefts by Ms. Wong There was by the way No evidence that there was any fraudulent concealment of anything in fact CRI and Intuit sent Regular full reports of all this activity all the banking activity all the payroll activity to its customers Was there somebody who was who was monitoring these employees? There's somebody responsible for auditing their books Which employees are we talking about Saccardi and Vang Holm That they were in a chain of command at CRI. They had a supervisor Generally There was there anyone monitoring their conduct? I mean when this big home took a gift the first time she was told to give it back Correct, and then she began to accept gifts regularly She did not report it correct did any of her superiors ever inquire as to whether she was accepting gifts Well, there's no evidence in the record to suggest that it was it a I got it was not an appropriate Act for an employee to accept a gift because the first gift she got she reported and she was told to give it back Correct, and then she after she didn't report him after that now is there a duty of a company doing Fiduciary type work to monitor the conduct of their employees That's a broad question your honor to instruct the employees to report certain things um Can I can I if I might take issue with the characterization of the work as being fiduciary type work it wasn't CRI into it this payroll processor. They were not fiduciaries to scar Sears and Associates or to Pentoga There's no there was no breach of fiduciary claim in this case what they were is essentially a processing company So rather than the companies doing their payroll in-house cutting their own checks They outsourced that and you expect the people to whom you outsource to do it honestly and there are certain Standards that I I think a company doing that type of work might impose upon Its employees to make sure they were doing it honestly not taking gifts not taking unusual instructions well again this this notion that they were Taking unusual instructions And I'm not sure whether we're now talking about the negligence cause of action or the aiding and abetting fraud cause of action as to the latter as to the latter It's important I think to focus on what the actual allegations were and what the claim was what was left of that claim at the summary judgment Stage was a claim of intentional tortious conduct on the part of my clients that they aided and abetted a The record before the district court on the summary judgment proceeding was that my clients sent full complete regular monthly reports statements to its customers Scarse ears and associates and Pentoga Detailing everything that was done beyond that without it would that have shown that that Wang was requesting checks for a hundred thousand dollars That it was absolutely known and it was known for two reasons one so that was that was part of the reports to SSA and Pentoga more particularly your honor that these checks were written on the Company SSA and Pentoga's bank accounts at Wells Fargo Bank Wells Fargo Bank Completely independently of the reports that CR CRI sent sent regular monthly bank statements those regular monthly bank statements Detailed just as all of our bank statements detailed every instrument every check every electronic transfer. Mr. Scarf Testified this was before the district court on summary judgment. Mr. Clark scarf testified when when shown Examples of the monthly statements monthly bank statements from Wells Fargo Bank. He said well If I'd ever looked at those it would have been immediately apparent to me that there was something amiss. There was nothing hidden There was And that's a good point. It's a fair point. Now, let me back up just a little bit Miss Wang Had been working for mr. Scarf for quite some time at what point did your clients enter into the to the processing picture? What what year I believe that If I could give a bit of history Wells Fargo Bank contracted with Scarf-steers and associates and Pentoga to do their payroll Something thereafter into it CRI, right? What year? I Your honor. I apologize. I Counsel tells me it was in 1983. Okay, I'll take that was my recollection The the miss Wang's illegal activities began in 1991. Is that correct? it's not at all clear when her legal I had an eight-year history of dealing between your clients and The scarf companies that correct about yes, your honor in excess of five years We'll go give or take it give or take a year and during that during that point Understand it miss wine. There's no allegation. This wine behaved illegally as that she was she was getting somewhere between Three to about five thousand dollars a month for her own salary at some point in 1991 Those figures go up dramatically and over the next couple of years increased to as much as a hundred thousand dollars a month Now that may be showing up on mr. Scarf's bank account. Is it also showing up in the internal reports at your clients? Is there anybody who's going to who's going to be able to is there anybody inside of your clients an Auditor somebody who has supervised these employees who would be able to say hey What happened here? We were issuing we were authorizing five thousand dollars up to five thousand dollars a month in payroll For eight years and all of a sudden it jumps to a hundred thousand dollars. What happened here? That's all that's a whale. That's a whale of a that was a whale of a promotion Well, I don't think was ever characterized as a promotion but the best way I can answer that your honor is that there's nothing in the record to suggest or to indicate that there was A separate level of review or supervision or auditing if you will of their customers payroll What what the what our contract with the contract with the customer says is we're going to do your payroll we're going to send your reports if there's a mistake or error call us let us know and Then presumably it would be fixed or there'd be some explanation But I would turn the question on its head your honor for years and years and years My client had an ongoing contractual service relationship with scarf seers and associates and Pantoga and there was never any Feedback from the club from these customers saying wait a minute last week's payroll contains what must be an error I If you're if you're arguing that that there was some a self-help remedy here For the scarf companies that they're negligent in not checking their own books That may be a very good argument. The question is whether there was any duty in your clients perhaps to alert them that there was a problem And and our answer certainly is no that our duty was contractual Exclusively that this was not a question of throwing a pass and that question can be decided as a matter of California law. Oh Clients have no duty That we had no extra contractual duty given the allegations and I want to be precise about this Given what was alleged in the consolidated consolidated amended complaint? there was no factual allegation in the fifth claim for relief of that pleading that Described or gave rise or created a duty of care a negligence and that can be decided on a 12 v 6 without without further inquiry It could have been and it was and Yes, your honor and the the cases We cite in our brief here in this in this on this appeal I think stand for the proposition that what the California Supreme Court now says is that when you have a commercial contract The parties duties and obligations to each other and their entitlements toward each other are defined by that contract and it is not permissible to attempt to superimpose over that commercially defined contract a set of free-floating negligence or tort type duties unless Unless and this is the important distinction Unless the plaintiff is in a position to allege that there was a intentional wrongful tort committed That would essentially Walk outside the four corners of the contract and of course there was such a tort alleged here the Conversion tort which has been just been conceded not to lie and the aiding and abetting fraudulent concealment tort Which was disposed of on summary judgment if I may and I know I've been Wordy here long-winded, but I I do feel I'd like to address the you're you're you're well over your time I will I have I have consumed quite a bit of your time. I'll give you about I'll give you just a half a minute to Thank you, I'm right here with respect to damages There was nothing before the district court on summary judgment to support a dime's worth of damages to mr. Scarf scarf Sears and Associates or Pantoga indeed at the argument quite true counsel the deposition of Hwang which you cited in your opposition motion summary judgment Showed that miss Hwang was taking funds from mr. Scarf's account absolutely your honor and doesn't that show that mr. Scarf was being damaged no your honor for that for two reasons. Oh, you mean he's just taking a loan, and he's sort of like Bear Stearns is I'm gonna pay it back. That's actually what happened your honor, but I was gonna make a Nicer point which was at the hearing at the summary judgment hearing Judge Fogel said to plaintiffs counsel show me where any of the plaintiffs suffered damage and the answer from plaintiffs counsel was Mr. Scarf Individually suffered none. It's not his money their contention their contention wise It's either scarf Sears and Associates money or Pantoga money There was nothing in the record to support that the plaintiffs submitted nothing and for them to say that well We submitted something that if you analyze it Archaeologically one could find something in their own interrogatory responses We're we're entitled to submit those interrogatory responses. They are not entitled to rely on them. They were not They did not satisfy rule 56e requirements for an affidavit and judge Fogel I Think rather dutifully and carefully explained in his rulings two rulings why it was that a it was not incumbent on him to comb through the record to try to find some evidence of damage when it hadn't been presented by the  and I'm not willing to do that even on the but she testified Hoyne testified that she took money from The checking account of scarf and put it in the Northcliffe account and from the Northcliffe account Paid back to CRI exact so it started from Scarf's account. No your honor. I knew you said that that that mr. Gregory Conceded made a judicial admission which bars him further from arguing the point that There was no damage to scarf that it was not Scarf's money. Is that in the record? Yes, so can you give me a citation? Yes, your honor I'll give you a citation in a moment and it was stated at the hearing on the summary judgment But let me just clarify No one suggested that the the money trail began with mr. Scarf's bank account. It didn't it began with Carol Wong's drawing down on lines of credit from financial institutions Wells Fargo Comerica B of a a line of credit is a loan from a bank to whom? To in this case to mr. Scarf to mr. Scarf and he's liable on that and when money comes out of an account for which he is liable his balance sheet will show that his liabilities have gone up and His cash has gone down the yes, your honor the question I'm not going to quibble with that at all. But the question in this case, this was the core question in this case is Who was Carol Wong stealing money from which is stealing money from three financial institutions? Or was she stealing money from scarf and scarf Sears and Pantoga? That's exactly what the nut of this case was about and as it played out for whatever reason Again, the plaintiffs and I don't think they'll Retreat from this here They told judge Fogle. We're not talking about. Mr. Scarf's money. We're talking about SSA's money and Pantoga's money and There was simply no evidence for the reason your honor has just pointed out that the money starts in Mr. Scarf's personal account it has been laundered through other accounts But there was zero evidence that that money ever belonged to nickel of it ever belonged to these entities Scar Sears and associates or Pantoga there was a debate an interesting debate in front of the district court whether the money that was very momentarily parked in mr. Scar's account was ever his money either or whether Carol Wong had simply stolen it from the banks. Mr Scarf took the position understand this. Mr. Scarf's position in the litigation was I never borrowed any money from Comerica or B of A Or Wells, that was his position. That wasn't my money. And so I didn't have to pay it back his debt Excuse me was his death because he had authorized Wang to draw down on the lines of credit But that was exactly what was being litigated your honor. Mr. Scarf never conceded He never agreed that he owed that money back. He was being sued by the banks and saying I don't owe you anything Well, it turned out he did owe the money. No, it turned out he didn't your honor. He never paid it back Didn't he pay back in a million and a half dollars to Wells Fargo in the settlement No, your honor. No, your honor. None of the banks collected anything from mr. Scarf And and and I concede I don't know that that's in the summary judgment record, but I will represent that to the court Mr. Scarf never paid back any money to any of these banks But But the record and again, I don't want to be too Technical about it, but the record before the district court Was that Hey, it wasn't mr. Scarf's money and and the site I'll give you is Excerpt of record to 2256 Lines 11 to 13. This is referred to on page 11 of our brief and in response to George Fogel's question Plaintiff's counsel. Mr. Scarf's counsel said quote Mr. Scarf's money was not used in the payroll scheme. It was scar Sears and Pantoga's money close quote That's what was said to the district court. I do think the district court judge Could legitimately rely on that representation. This was not a careless off-the-cuff remark The question of whose money Carol Wong stole was at the core of this case from day one Was it bank money? Was it mr. Scarf's money? Was it SSA money? Was it Pantoga money and it is absolutely the case. I want to be completely frank about this It was it was our position on summary judgment. So question, but that she stole lots of money. She went to prison There's no question about that What we we sought to establish on summary judgment was that there was no evidence That a nickel of it belonged to scar Sears and associates or Pantoga or mr Scarf for that matter and that was the record that was the record before the district court on summary judgment, which is which is why I Perhaps glibly refer to this earlier as a request for a do-over rather than appeal because if you simply look at the record That was before the district court on summary judgment. It is very difficult Very difficult, I think to charge the district court judge with error or of ignoring any evidence He made the right decision based on the record. Thank you. Thank you counsel Mr. Gregory, we do address that last point. Is there any your honor? Was there any evidence before the district judge? That it was actually mr. Scarf's money that was being stolen by Hwang. And if so, please give us a citation of the record Certainly, your honor. I think the first point to start off with is that Carol Wong? No, please start out with that with the answer to that question The the citation for the payroll scheme is that the money started from Pantoga and scarf Sears and the fact that it included mr. Scarf's money is Exhibit 28 to mrs. Mr. Bass declaration and that is if I may your honor and It's It's mr. Bass's declaration starts your honor It's 1304 to 1314 your honor And the access of record, yes, your honor Mr. Bass started off by saying that it was just payroll that they were processing. That's not true. It was tax and Payroll, they were doing tax reporting to the federal and state agencies and they were adjusting the taxes consciously To stay under the tax radar and they did so So that when the reports went to scarf Sears and Pantoga there would be no unusual payroll tax activity and That's why they were different than your routine payroll processors, which is what mr Bass was trying to portray them as is that they're simply order takers They weren't simply order takers and that the court could look at the declaration of Susan's story submitted at the summary judgment stage by defendants It details the work that they did in processing the payroll and that's particularly at er site 1326 to 1328 The the what they were doing is they were adjusting the taxes and in terms of respondeat superior as the case Maryam of the California Supreme Court case states the determination of whether an employee is acted within the scope of Employment is a question of fact and this district. That's all I'm not sure that you that you addressed judge Bayes Question satisfactorily, so You gave us you gave us a reference in the in the ER and told us that the payroll scheme came from The scarf entities. I think judge Bayes question was what evidence in the record is there that mr. Scarf personally? Suffered from this scheme. It's on that same if I may your honor. It's on the same page because miss Essentially as mr. Bass pointed out and as the flowcharts read the money that was being paid Started from mr. Scarf's account it went through an entity called Northcliffe, and then it went to either Antoga or to scarf sears. I thought what mr. Bass said and see if you can deal with this scenario he said that the money that went to Northcliffe Wasn't scarf's money. It was Wells Fargo and Camerica's money because Scarf's successfully defended himself against Wells Fargo and Camerica Claiming that scarf had to pay them back the money that Wang borrowed through scarf's line of credit from Wells Fargo and Camerica if I if that is so Right if scarf didn't have to pay back Wells Fargo and Camerica for what Wang took out of those lines of credit Then mr. Bass has a point does he not if I may or may answer that in two parts one is mr. Scarf's in bankruptcy, and he had to go into bankruptcy because of what happened here because of the banks and the banks were Attaching his assets, and this is all was all before the district court in the consolidated. It's like he Successfully established that he did not owe any money to the banks on his lines of credit if I may continue your honor mr. Scarf then in the context of both of this litigation and the bankruptcy Settled with the banks and did not To directly answer your question did not pay the banks as a result of the settlement But he paid a lot of money to avoid having to pay the banks but I want to go back to the core point your honors that the Long stole over 15 million dollars the lines of credit With the banks did not even get to 10 million dollars there was an over 5 million dollar Delta that the defendants concede did not come from any bank and It had to come from these entities not whether it had to come the question is did you a allege and be? Supply sufficient information for a reasonable trier of fact to find that it came from scarf. Yes, your honor, and that's That's those are the allegations the 1304 1314 will tell me that yes, your honor in this in the succinct fashion Thank you very much. Thank you All right, we thank counsel for the argument the case is submitted and with that that completes the oral argument calendar for today the court stands in recess until tomorrow
judges: Bybee, Bea, Roth